IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA
CIVIL DIVISION

FAYYAZ SIAL,
        Plaintiff,
                                   CASE NUMBER: 2015-CA-003498-WS
                                   DIVISION: _____

vs.

BALBOA INSURANCE COMPANY,
        Defendant.
_____/

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff, FAYYAZ SIAL, by and through the undersigned counsel, hereby sues Defendant,

BALBOA INSURANCE COMPANY, and as grounds therefore would state as follows:

### GENERAL ALLEGATIONS

1.      This is an action for damages in excess of fifteen thousand dollars ($15,000)

exclusive of interest, attorneys' fees, and costs.

2.      At all times material hereto, Plaintiff was and is the owner of certain real property

located at 9206 Topneck Street, New Port Richey, Pasco County, Florida.

3.      All conditions precedent to this action have been preformed, occurred, or waived.

4.      Plaintiff retained the undersigned counsel and is indebted to said counsel for

reasonable attorney's fees.

5.      At all times applicable to this lawsuit, Plaintiff was covered under a policy of

homeowners insurance, issued by Defendant, including sinkhole coverage for damage to their

residence premises. A copy of Plaintiff's policy is attached as Exhibit "A".

6.      Plaintiffs renewed said policy each and every year and paid all premiums due

thereunder.

7.      On or about October 21, 2011, while said policy was in full force and effect,

Plaintiff discovered damage to the insured dwelling, including, but not limited to, progressive

physical and structural damage to the walls and floors of the insured dwelling, as well as to other insured structures on the property and reported a claim to the Defendant based upon said damage.

8. That the above-mentioned policy of insurance provided coverage for damage caused by a sinkhole loss.

9. Plaintiff made an application for insurance benefits under the policy.

10. Defendant investigated the loss and concluded the damage to the Plaintiff's insured dwelling and other insured structures was caused by a covered peril under the policy, namely a sinkhole loss.

11. Subsurface repairs were affected in accordance with the recommendations of Defendant's retained geotechnical experts.

12. As the repairs were completed, in accordance with the recommendations of Defendant's retained geotechnical experts, new damage resulted to the home in addition to what was previously addressed. Based on these observed damages, Plaintiff immediately notified Defendant.

13. Defendant has denied coverage for the damages to the insured dwelling.

14. Plaintiff disputed the denial of coverage of the claim.

15. Plaintiff provided Defendant with a copy of the report regarding the additional damages prior to the filing of this lawsuit and requested that Defendant accept coverage for the covered claim.

16. Defendant has refused to provide coverage for any additional insurance benefits as a result of this loss.

17. Plaintiff is suffering direct physical and structural damage to their insured dwelling, structures and property as a result of a covered peril as contemplated by the policy of insurance.

18.     Plaintiff made an application for insurance benefits under the policy, but Defendant failed and/or refuses to extend coverage for the full benefits Plaintiff is entitled to for the loss to properly repair the cosmetic and structural damage to the building.

19.     The Defendant breached the policy of insurance by failing to pay all benefits to repair the cosmetic and structural damage to the insured dwelling.

20.     Plaintiff is entitled to the full cost of repairs of the damage to the insured dwelling, and other structures on the property including, but not limited to the costs associated with cosmetic repair, repairs of the cracks, structural repair, temporary repairs and other expenses necessary to repair the subject insured dwelling. If the insured dwelling and other structures on the property are not repairable within the applicable coverage limits, the Plaintiff is entitled to an amount equal to such limits for the total loss.

21.     Due to Defendant's denial of the requested benefits and breach of material terms of the insurance contract, any obligation that the Plaintiff may have had to comply with conditions precedent to filing suit and to receiving payment or otherwise, has been discharged.

22.     Plaintiff has attempted in good faith to resolve this dispute without judicial intervention to no avail.

23.     Due to Defendant's refusal to pay the losses sustained by Plaintiff, Plaintiff has been required to retain the services of the undersigned counsel and Plaintiff is obligated to pay them a reasonable fee for their services.

24.     Plaintiff is entitled to attorneys' fees pursuant to section 627.428, Florida Statutes.

25.     Defendant owes prejudgment interest, expert fees, costs, attorneys' fees, the costs of all structurally necessary repairs, and, if the insured dwelling is not repairable within applicable coverage limits, an amount equal to such limits for the total loss.

WHEREFORE, Plaintiff, demands judgment against Defendant for: (i) all damages including, but not limited to the full cost of repair or replacement of Plaintiffs' insured dwelling; (ii) pre-judgment interest; and (iii) court costs, costs, expert fees and attorneys' fees pursuant to section 627.428, Florida Statutes, and such other and further relief as the court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Dated this 30th day of October 2015.

/S/ Morgan Barfield
**MORGAN BARFIELD, ESQUIRE**
Florida Bar Number: 0605761
CORLESS BARFIELD
TRIAL GROUP, LLC
4350 W. Cypress Street, Suite 910
Tampa, Florida 33607
service@corlessbarfield.com
Telephone: (813) 258-4998
Facsimile: (813) 258-4988
Attorneys for Plaintiffs

## COPY CERTIFICATION BY DOCUMENT CUSTODIAN

State of ____Texas_____

County of ___Collin___

I, _____Kenneth Mark Davidson____ (Affiant), hereby declare that the attached of reproduction of Bank of America; Certificate CW8818688 is a true, correct, and complete copy of a document in my possession or control.

_____

Signature of Custodian of Original Document

Address          __5801 Tennyson Parkway Suite 600
                  ____Plano, Texas 75024_____

Subscribed and sworn to or affirmed before me _Karen Lee__(name of commissioned notary)

on this May 18, 2015 by Kenneth Mark Davidson   (Affiant) proved to me on the basis of

satisfactory evidence to be the person who appeared before me.

Witness my hand and official seal.

**KAREN LEE**
Notary Public, State of Texas
My Commission Expires
November 29, 2018

Notary's Signature

### OPTIONAL

Title or Type of Document: _____

Number of Pages:        _____

Document Date:          _____

Other Information:      _____

**Risk Based Protection Policy (4800-0109)**

Re:   **Fayya Sial**
      **9206 Topneck Street, New Port Richey, FL  34654**
      **Certificate # CW8818688**
      **Loan #: 9046-0000-044771008**

The following forms are enclosed for your reference. Please note that coverage is not provided for personal property or personal liability. Also, flood and earthquake coverage are excluded.

| Form No. | Description |
|---|---|
| 01A09-00DE0014-E1204 | Declaration |
| 01A09-MFMP0003-E0504 | Lender's general Form |
| 01A09-MFPL0003-E0504 | Residential Property Fire Insuring Form |
| 01A09-MFPL0002-E0504 | Manufactured Home Fire Insuring Form |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| **State Specific Endorsement:** |  |
| 01A09-09ED0106-R0211 | FL Amendatory Endorsement |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**Risk Based Protection Policy**

**DECLARATIONS PAGE**

# BALBOA INSURANCE COMPANY

(a stock company)
Home Office
3349 Michelson Drive, Suite 200, Irvine, CA 92612-8893

**POLICY NUMBER:_____**
Florida Properties only

**Item 1.   NAMED INSURED**:

Name:                                                         Agent:

Street:                                                       Street:

City, State, Zip:                                             City, State, Zip:

                                                              Agent Code:

**Item 2.   POLICY PERIOD:**

| FROM:<br>Month   Day   Year | TO:<br>Month   Day   Year |
|---|---|
|  | UNTIL CANCELLED |

12:01 A.M. Standard Time at the address of the NAMED INSURED.

**Item 3. COVERAGE:** Coverage on residential properties, manufactured homes, and commercial properties shall be subject to this Declarations Page, the Lender's General Form, the Residential Property Fire Insurance Form, the Manufactured Home Fire Insurance Form, and the Commercial Property Fire Insurance Form which, together with any applicable endorsements, form this Hazard Right Policy ("the Policy"). This insurance applies to direct physical loss or damage by the perils insured against to real property. No coverage is provided for contents, personal effects, additional living expense, fair rental value or liability. NO COVERAGE IS PROVIDED UNDER THIS POLICY FOR LOSS CAUSED BY EARTHQUAKE OR FLOOD or any other cause of loss that is excluded by the Residential Property Fire Insurance Form, the Manufactured Home Fire Insurance Form, or the Commercial Property Fire Insurance Form.

**Item 4. PREMIUM:** The premium rates shall be computed as directed by the company.

**Item 5. MAXIMUM AMOUNT OF INSURANCE:**

| Types of Eligible Property | Maximum Amount of Insurance |
|---|---|
| Residential Property | limits $ _____/ per described location |
| Manufactured Home | limits $ _____/ per described location |
| Commercial Property | limits $ _____/ per described location |

**Item 6. ENDORSEMENTS:** The endorsements listed below are attached to and form part of this Policy.

See Attached List

**Item 7. DEDUCTIBLES:** The following deductibles shall apply to each and every loss reported hereunder:

$1,000 Residential Owner or Tenant Occupied or Vacant.

Date of Issue:_____   Countersignature _____
                                                              Authorized Representative

For inquiries, information about coverage, and assistance in resolving complaints, please call: 1-800-854-6115.

# LENDER'S GENERAL FORM

### Risk Based Protection

In consideration of the payment of the premium, and subject to all of the provisions of the policy forms issued under this Policy, WE agree to indemnify YOU or YOUR legal representatives for any amount that YOU may be entitled to recover as the result of a covered LOSS.

### DEFINITIONS

Whenever used in this Policy, the following words shall have the meanings as shown herein:

"YOU", "YOUR", and "YOURS," as defined in the Residential Property Fire Insurance Form, the Manufactured Home Fire Insurance Form, and the Commercial Property Fire Insurance Form.

"WE", "US", "OUR" and "OURS," as defined in the Residential Property Fire Insurance Form, the Manufactured Home Fire Insurance Form, and the Commercial Property Fire Insurance Form.

"COMMERCIAL PROPERTY," as defined in the Commercial Property Fire Insurance Form.

"DECLARATIONS PAGE," as defined in the Residential Property Fire Insurance Form, the Manufactured Home Fire Insurance Form, and the Commercial Property Fire Insurance Form.

"LOSS," as defined in the Residential Property Fire Insurance Form, the Manufactured Home Fire Insurance Form, and the Commercial Property Fire Insurance Form.

"MANUFACTURED HOME," as defined in the Manufactured Home Fire Insurance Form.

"NOTICE OF INSURANCE," as defined in the Residential Property Fire Insurance Form, the Manufactured Home Fire Insurance Form, and the Commercial Property Fire Insurance Form.

"PROPERTY" means RESIDENTIAL PROPERTY, MANUFACTURED HOME, or COMMERCIAL PROPERTY.

"RESIDENTIAL PROPERTY," as defined in the Residential Property Fire Insurance Form.

### PREMIUM

The premium charged will be computed in compliance with the rates used by US on the effective date of the subject NOTICE OF INSURANCE.

### SPECIAL PROVISIONS

**1.   COVERAGE LIMITATION**
Insurance under this Policy is limited to PROPERTY in which YOU have an insurable interest and which is reported to US no later than one year after the effective date of coverage on the individual PROPERTY.

**2.   LIMITS OF RECOVERY**
The maximum amount of coverage applicable to a risk insured hereunder shall be the amount of insurance purchased by YOU, as stated on the NOTICE OF INSURANCE, less the applicable deductible. OUR settlement options will be specified in the fire insurance form applying to the RESIDENTIAL PROPERTY, MANUFACTURED HOME, or COMMERCIAL PROPERTY.

**3.   OTHER INSURANCE**
Insurance under this Policy is provided for a specific PROPERTY at YOUR request, based upon YOUR belief that no other insurance acceptable to YOU is in force insuring YOUR interest in the subject PROPERTY. If it is determined that other insurance acceptable to YOU is in force, WE will cancel the insurance on the PROPERTY referenced in the NOTICE OF INSURANCE on the effective date of the other insurance or the effective date shown on the NOTICE OF INSURANCE, whichever is the more current date, even if the other insurance is discovered after the DATE OF LOSS.

01A09-MFMP0003-E0504

WE will make no payment for any loss to PROPERTY that is insured by other insurance acceptable to YOU.

In no event shall this insurance apply on a pro-rata or contributing basis.   Insurance under this Policy does not supplement other insurance that provides inadequate limits of coverage or that contains more restrictive terms than the terms of this Policy.

4.   **TERMINATION**
YOU may cancel this Policy at any time by giving written notice to US stating when, thereafter, such cancellation shall be effective.  WE may cancel this Policy for non-payment of premium if WE have given YOU at least fifteen (15) days' written notice at YOUR last address known to US or at least sixty (60) days' written notice if the cancellation is for any reason other than non-payment of premium. This Policy shall cease at 12:01 A.M. (Standard Time) at YOUR address shown on the DECLARATIONS PAGE on the date of cancellation specified in the notice.

If this Policy is cancelled, whether by YOU or US, all in-force insurance on PROPERTY for which a NOTICE OF INSURANCE has been issued shall be cancelled concurrently with the cancellation of this Policy unless WE send a notice to YOU stating that the insurance referenced on the NOTICE OF INSURANCE will remain in effect. If WE give notice that any such insurance on specific PROPERTY will remain in effect after cancellation of the Policy, the insurance on the specific PROPERTY will then remain in force until the expiration date of such insurance or until the insurance on the specific PROPERTY has been cancelled in compliance with the cancellation provisions of the applicable RESIDENTIAL PROPERTY FIRE INSURANCE FORM, COMMERCIAL PROPERTY FIRE INSURANCE FORM or MANUFACTURED HOME FIRE INSURANCE FORM, except that WE reserve the right to cancel insurance referenced in any or all NOTICES OF INSURANCE upon at least fifteen (15) days' written notice if such cancellation is for non-payment of premium, or at least sixty (60) days' written notice if cancellation is for any reason other than non-payment of premium.

5.   **INSPECTION AND AUDIT**
WE shall be permitted, at all reasonable times, to inspect the insured PROPERTY and to examine YOUR books and records insofar as those records pertain to any claims made because of any LOSS.  This includes, but is not limited to, the right to review YOUR records for information about other insurance provided by the BORROWER and information regarding the net loan balance, both at the time the insurance referenced on the NOTICE OF INSURANCE is effective and at the DATE OF LOSS. This right shall remain in force until twelve (12) months after all insurance referenced on the NOTICES OF INSURANCE issued under this Policy have been cancelled or have expired.  This right shall also remain in force for twelve (12) months after each LOSS has been finally closed by payment or otherwise.

6.   **STATE-SPECIFIC TERMS AND CONDITIONS**
The terms and conditions applying to the insurance referenced in a NOTICE OF INSURANCE may vary depending upon the forms approved by the state where the PROPERTY is located.

7.   **ASSIGNMENT**
There shall be no valid assignment of YOUR rights under this policy unless WE have given OUR advance written consent to YOU.

IN WITNESS WHEREOF, Balboa Insurance Company has caused this Policy to be signed by its President and Secretary, at Irvine, California, and countersigned on the DECLARATIONS PAGE by its authorized representative.


S ECRETARY                                        PRESIDENT


01A09-MFMP0003-E0504

## Residential Property Fire Insurance Form

### Risk Based Protection

### INSURING AGREEMENT

In consideration of the premium paid, and subject to the limits of liability, exclusions, conditions and other terms contained in the Lender's General Form and this Residential Property Fire Insurance Form ("Residential Property Form"), WE agree to indemnify YOU for a covered LOSS, to the extent of YOUR insurable interest in such LOSS.

### DEFINITIONS

Whenever used in this Residential Property Form, the following words shall have the meanings as shown herein:

"YOU," "YOUR," and "YOURS" mean the NAMED INSURED shown under Item 1 on the DECLARATIONS PAGE of the Policy, under which the insurance on the DESCRIBED LOCATION has been issued, which has an interest in the RESIDENTIAL PROPERTY described in the NOTICE OF INSURANCE as the direct result of a first mortgage, second mortgage, other lien instrument, or an agreement for the servicing of such contracts.

"WE," "US," "OUR," and "OURS" mean the Company that underwrites this insurance.

"ACTUAL CASH VALUE" means the amount it would take to repair or replace the damaged property on the DATE OF LOSS with material of like kind and quality, subject to deduction for deterioration, depreciation or obsolescence, and contractor's overhead and profit. ACTUAL CASH VALUE applies to valuation of property whether the property has sustained partial or total LOSS.

"BORROWER" means the person(s) or entity identified as the BORROWER on the NOTICE OF INSURANCE.

"DATE OF LOSS" means the date on which the LOSS occurred.

"DECLARATIONS PAGE" means the DECLARATIONS PAGE of the Policy, which identifies the Named Insured and the Policy Period applying to the Policy.

"DESCRIBED LOCATION" means the location identified as the DESCRIBED LOCATION on the NOTICE OF INSURANCE.

"NOTICE OF INSURANCE" refers to the form issued as notice of insurance purchased by YOU. A NOTICE OF INSURANCE form specifies the location, amount, and term of insurance for the individual RESIDENTIAL PROPERTY that has been insured by US at YOUR request.

"FUNGI" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

"LOSS" means direct, sudden and accidental physical damage to the RESIDENTIAL PROPERTY or OTHER STRUCTURES, caused by an insured peril, or the theft of all or part of the covered RESIDENTIAL PROPERTY or OTHER STRUCTURES.

"OTHER STRUCTURES" means structures on the DESCRIBED LOCATION, which are separated from the dwelling structure by clear space or connected to the dwelling structure by only a fence, utility line or similar connection. OTHER STRUCTURES do not include structures that are used or partially used for commercial, farming, or manufacturing purposes, or are rented or held for rental to any person not a tenant of the dwelling structure, unless used solely as a private garage.  Land, including the land on which OTHER STRUCTURES are located, is not covered property.

"POLICY" means the Policy as defined on the DECLARATIONS PAGE (referred to herein as "the Policy").

"RESIDENTIAL PROPERTY" means the one to four-unit dwelling structure identified as the DESCRIBED LOCATION, which is designed, intended, and used principally for dwelling purposes, and structures attached to the dwelling structure. Land, including the land on which the RESIDENTIAL PROPERTY is located, is not covered property.

01A09-MFPL0003-E0504                                                              1

"VOLCANIC EVENT" means LOSS caused by the blast or airborne shock waves, ash, dust, or flow of lava from the eruption of a volcano.

## OTHER COVERAGES

1.  Other Structures. The Residential Property Form provides coverage for OTHER STRUCTURES at the DESCRIBED LOCATION up to an amount equal to 10% of the RESIDENTIAL PROPERTY Limit of Liability shown on the NOTICE OF INSURANCE. This additional amount will not reduce the Limit of Liability that applies to the damaged property.

2.  Debris Removal. WE will pay YOUR reasonable expenses incurred for the removal of debris due to a covered LOSS. This expense is included in and will reduce the Limit of Liability that applies to the damaged property.

3.  Emergency Repairs. In the event of a covered LOSS, WE will pay the reasonable cost incurred for necessary repairs that are made solely to protect the RESIDENTIAL PROPERTY or OTHER STRUCTURES from further LOSS. This expense is included in and will reduce the Limit of Liability that applies to the damaged property.

4.  Collapse. WE will pay for LOSS to the RESIDENTIAL PROPERTY that results from the actual collapse of a building or any part of a building only if such collapse is caused by one or more of the following:
    a.  hidden decay;
    b.  hidden insect or vermin damage;
    c.  weight of contents, equipment, animals or people;
    d.  weight of rain that collects on a roof;
    e.  use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

    Damage to an awning, fence, patio, pavement, underground pipe, swimming pool, flue, cesspool, septic tank, drain, foundation, retaining wall, bulkhead, pier, dock or what is not covered under this coverage unless the damage is a direct result of the collapse of a structure. This coverage does not include settling, cracking, shrinking, bulging or expansion.

    This expense is included in and will reduce the Limit of Liability that applies to the damaged property.

## INSURED PERILS AND GENERAL EXCLUSIONS

WE insure YOU for LOSS. However, WE do not insure YOU for loss or damage caused directly or indirectly by, consisting of, or resulting from, any of the following perils. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage:

1.  Wear and tear, marring, deterioration, inherent vice, latent defect, freezing, rust, corrosion, neglect before or after a loss, mechanical or structural breakdown or failure, abusive use, or defective, faulty, or inadequate maintenance, design, construction, remodeling, planning, zoning, surveying or siting of the RESIDENTIAL PROPERTY or OTHER STRUCTURES. (Incomplete remodeling is considered defective, faulty or inadequate remodeling.) If any of these causes an ensuing LOSS in the form of a sudden and accidental escape of water from a plumbing, heating or air conditioning system or household appliance, WE cover LOSS caused by the water. WE also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance from which this water escaped. WE do not cover loss to the system or appliance from which this water escaped;

2.  Contamination, pollution, smog, or vapors;

3.  Smoke from agricultural smudging or industrial operations;

4.  Flood, meaning a general, temporary condition of complete or partial covering or inundation of normally dry land areas from:
    a.  The overflow of tidal or inland water, including streams, rivers or lakes; or
    b.  The run-off or build-up of surface water from any source; or
    c.  Mudslides or mudflows caused by the build-up of water on or under the ground; or
    d.  The sinking, collapse or movement of land along the shore of a body of water as a result of undermining or erosion caused by waves, flow, or currents of water exceeding normal levels.

However, ensuing LOSS by fire or explosion will be covered;

5.    Water that backs up through or overflows from sewers, drains, plumbing lines, or sumps, however caused, if the origin of such backup or overflow is located off the DESCRIBED LOCATION;

6.    Water below the surface of the ground or loss or damage from the pressure exerted by such water, including its flow, seepage or leakage through foundations, walls, floors, basements, doors, windows, sidewalks, driveways, or any other opening;

7.    Earth movement caused by, resulting from, contributed to or aggravated by earthquake; landslide; the elevation, sinking, or shifting of land or soil, except a VOLCANIC EVENT, unless direct damage by a fire or explosion ensues, in which case WE will pay only for the ensuing fire or explosion LOSS;

8.    War, whether declared or not, insurrection, revolution, civil war, rebellion, warlike act by a military force or the personnel of any military force, seizure, destruction or use for a military purpose, including any consequence of any of these. The detonation or discharge of any nuclear weapon shall be deemed an act of war, even if done accidentally;

9.    Nuclear reaction, radiation or radioactive contamination, or any consequence of any of these, and loss or damage caused by these shall not be considered loss or damage by fire, explosion, or smoke, whether those perils be covered or not by the Residential Property Form;

10.    Collapse, settling, shrinking, cracking, expansion or bulging of pavements, foundations, floors, walls, ceilings, patios, walkways or driveways, except as provided for under the "Other Coverages" portion of the Residential Property Form;

11.    Freezing of any heating, plumbing, or air conditioning system or any household appliance, or by the leakage, overflow or discharge from within the system or appliance caused by freezing during any period while the RESIDENTIAL PROPERTY or OTHER STRUCTURE is vacant, unoccupied or under construction, unless YOU have:
    a.    maintained heat in the building, or
    b.    turned off the water supply and drained water from the system and appliances;

12.    Freezing of, thawing of, or the pressure or weight of water, ice or snow on, a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock, whether driven by wind or not;

13.    Constant or repeated seepage or leakage of water or steam over a period of time from a plumbing, heating or air conditioning system or any household appliance;

14.    Theft of any property not attached to or part of the RESIDENTIAL PROPERTY or OTHER STRUCTURES or theft of any part of the RESIDENTIAL PROPERTY or OTHER STRUCTURES while undergoing construction, remodeling or repair;

15.    Hail, ice, snow, sleet or wind to any outdoor antennas, dishes, or aerials, including their lead-in wiring, supports, towers and masts;

16.    Birds, rodents, reptiles, other animals, insects, fish;

17.    FUNGI, wet or dry rot, viruses, bacteria, or pathogenic organisms, including spores, scents or by-products produced or released by any of these;

18.    Acts or decisions of any person, group, governmental body or organization, including the failure to act or decide;

19.    Power outage, meaning the interruption of power or other utility service, if such interruption takes place away from the RESIDENTIAL PROPERTY. If an ensuing LOSS to the RESIDENTIAL PROPERTY results from the power outage, WE will pay for such ensuing LOSS if it is not otherwise excluded by the Residential Property Form;

20.    Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of any building or structure, except as provided for under the Residential Property Form.

Under paragraphs 1, 10, 11, 12, 13, 14, 15, and 16, any ensuing LOSS caused by any of these, if not otherwise excluded in the Residential Property Form, is covered.

## CONDITIONS

The following conditions apply to this Residential Property Form:

1. Period of Coverage. The Residential Property Form applies only to LOSS that occurs during the coverage period shown on the NOTICE OF INSURANCE.

2. Limit of Liability. No matter how many people or entities have an insurable interest in the RESIDENTIAL PROPERTY or OTHER STRUCTURES, WE shall not be liable for an amount greater than the amount of insurance requested by YOU, as shown on the NOTICE OF INSURANCE, less the applicable deductible.

   OUR liability shall not exceed the least of the following, less the applicable deductible stated in the NOTICE OF INSURANCE:
   a. The Limit of Liability that applies to the damaged or destroyed structure as shown in the NOTICE OF INSURANCE;
   b. The cost to replace or repair the damaged or destroyed structure with material of like kind and quality, without deduction for depreciation, payable after replacement or repair is completed within a reasonable amount of time after the LOSS;
   c. The ACTUAL CASH VALUE of the damaged or destroyed structure on the DATE OF LOSS, if such structure has not been repaired or replaced.

3. Fraud or Concealment. WE will not provide coverage if YOU have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

4. YOUR duties after LOSS. When a LOSS has occurred, YOU shall see that the following duties are performed:
   a. give US or OUR agent immediate notice of the LOSS;
   b. protect the RESIDENTIAL PROPERTY from further damage, make reasonable and necessary repairs required to protect the RESIDENTIAL PROPERTY and OTHER STRUCTURES, and keep an accurate record of the cost of such protection measures and repairs;
   c. exhibit the damaged RESIDENTIAL PROPERTY and OTHER STRUCTURES to US or OUR representatives as often as WE reasonably require, and submit to examination(s) under oath;
   d. submit to US, within 60 days after WE request, YOUR signed, sworn proof of loss, which sets forth, to the best of YOUR knowledge and belief:
      (1) the time and cause of LOSS;
      (2) YOUR interest and the interest of all others in the RESIDENTIAL PROPERTY and OTHER STRUCTURES and all encumbrances existing thereon;
      (3) the details of any other insurance that may cover the LOSS;
      (4) any changes in the title or occupancy of the RESIDENTIAL PROPERTY and OTHER STRUCTURES during the term referenced on the NOTICE OF INSURANCE;
      (5) specifications of the damaged RESIDENTIAL PROPERTY and OTHER STRUCTURES and detailed estimates for repair of the damage.

   OUR request for examination(s) under oath shall not waive any of OUR rights.

5. Loss Settlement. A LOSS will be settled as follows:

   a. OTHER STRUCTURES, at ACTUAL CASH VALUE at the time of LOSS;
   b. Installed carpeting, appliances, awnings, outdoor antennas and outdoor equipment attached to a structure, at ACTUAL CASH VALUE at the time of LOSS;
   c. The one to four-unit dwelling structure included in the RESIDENTIAL PROPERTY, at replacement cost without deduction for depreciation if repair or replacement has been completed within a reasonable time after LOSS; at ACTUAL CASH VALUE until such repair or replacement is completed.

6. Pair or Set. In settlement of covered damage to a pair or set, WE may elect to:
   a. Replace or repair any part of the pair or set;
   b. Pay the difference between the ACTUAL CASH VALUE of the pair or set before the LOSS and after the LOSS.

7. Replacement of Glass. WE will pay to replace glass with safety glazing materials when required by ordinance or law.

8. Appraisal. If YOU and WE fail to agree on the amount of LOSS, either can make a written demand upon the other that the amount of LOSS be determined by appraisal. Within twenty (20) days of such written demand, each party shall select a competent and disinterested appraiser and notify the other of he appraiser selected. The two appraisers shall then select a competent and impartial umpire. If the appraisers do not agree on an umpire within fifteen (15) days, then, at the request of YOU or US, such umpire shall be selected by a judge of a court of record in the state where the RESIDENTIAL PROPERTY is located. The appraisers shall then appraise the LOSS. If the appraisers submit a written proof of agreement to US, the amount agreed upon shall prevail. If the appraisers fail to agree, they shall submit their differences to the umpire within a reasonable time. The amount agreed upon in writing and signed by any two of these three shall be the amount of the LOSS. The appraisal award shall be considered binding as to the amount of the LOSS. WE shall pay all the expenses of OUR chosen appraiser, and YOU shall pay all the expenses of YOUR chosen appraiser. Each party shall also pay for its own voluntarily-incurred expenses including, but not limited to, attorney fees or expert witness fees. Any other expenses of the appraisal, including the compensation of the umpire, shall be paid equally by YOU and US. OUR request for appraisal shall not waive any of OUR rights.

9. Other Insurance. YOU and WE agree that the insurance provided under the Residential Property Form has been requested by YOU because YOU believe that no other insurance acceptable to YOU is in force to protect YOUR interest in the RESIDENTIAL PROPERTY.

   Insurance under the Residential Property Form will automatically terminate on the effective date and time of any other policy or certificate of insurance acceptable to YOU. WE shall not make any payment for LOSS if other insurance acceptable to YOU is in force on the DATE OF LOSS.

   In no event shall this insurance apply on a pro-rata or contributing basis. Insurance under the Residential Property Form does not supplement other insurance that provides inadequate limits of coverage or that contains more restrictive terms than the terms of the Residential Property Form.

10. Subrogation. WE shall be subrogated to any rights YOU have to recovery against any person(s). However, WE shall not exercise this right against the BORROWER. WE may require an assignment of rights of recovery from YOU to the extent that payment is made by US. If an assignment is sought, YOU shall sign and deliver all related papers, and shall otherwise cooperate with US and do nothing to impair OUR subrogation rights.

11. Suit against US. No action may be brought unless there has been compliance with the provisions of the Residential Property Form and the Lender's General Form, and the action is started within one year after the DATE OF LOSS.

12. Repair or Replacement Option. WE may repair or replace any part of the damaged property with functionally-equivalent property if WE have given YOU or mailed to YOU at YOUR last known address, written notice of OUR intention to do so.

13. Loss Payment. WE will adjust each LOSS with YOU and will pay YOU. If the amount of LOSS exceeds YOUR insurable interest, the BORROWER may be entitled, as a simple loss payee only, to receive payment for any residual amount due for the LOSS, not exceeding the lesser of the applicable Limit of Liability indicated on the NOTICE OF INSURANCE and the BORROWER's insurable interest in the damaged or destroyed property on the DATE OF LOSS. Other than the potential right to receive such payment, the BORROWER has no rights under the Residential Property Form.

   Payment for LOSS will be made within thirty     (30) days after WE reach agreement with YOU as to the amount of the LOSS or, failing that, within thirty (30) days after the entry of a final judgment or the filing of an appraisal award with US.

14. Abandonment. WE may take all, part, or none of the property for which WE have made payment, but YOU cannot abandon any property to US without OUR prior written approval.

15. No Benefit to Bailee. WE will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of the Residential Property Form.

01A09-MFPL0003-E0504                                                                 5

16. Cancellation:

   a. YOU may cancel the insurance provided under the Residential Property Form at any time by giving written notice to US and the BORROWER stating when, thereafter, such cancellation is to take effect. YOU may also cancel the insurance provided under the Residential Property Form if the BORROWER provides YOU proof of other insurance that is acceptable to YOU and insures YOUR interest in the RESIDENTIAL PROPERTY and OTHER STRUCTURES. In such case, the effective date of cancellation will be the effective date of the insurance obtained by the BORROWER or the effective date of the insurance provided under the Residential Property Form, whichever is later.

   b. WE may cancel the insurance provided under the Residential Property Form for non-payment of premium if WE have given YOU at least fifteen (15) days' written notice at YOUR last address known to US or at least sixty (60) days' written notice if the cancellation is for any reason other than non-payment of premium. WE may also cancel the insurance provided under the Residential Property Form if WE discover that other insurance acceptable to YOU is in effect to insure YOUR interest in the RESIDENTIAL PROPERTY and OTHER STRUCTURES, even if such other insurance is discovered after a LOSS.

   c. The completion of foreclosure proceedings on RESIDENTIAL PROPERTY by YOU shall terminate the insurance provided under the Residential Property Form. In such case, notice of foreclosure by YOU to US will be YOUR request for cancellation. Cancellation will be effective on the date the RESIDENTIAL PROPERTY is conveyed to YOU or to a third party via the foreclosure process.

17. Expiration of Insurance. If the Policy is in force upon expiration of the insurance provided under the Residential Property Form, YOU may request that new insurance under the Residential Property Form be issued to insure the RESIDENTIAL PROPERTY and OTHER STRUCTURES. If YOU fail to request the issuance of new insurance under the Residential Property Form, the insurance on the RESIDENTIAL PROPERTY and OTHER STRUCTURES will cease upon the expiration date of the Residential Property Form stated in the NOTICE OF INSURANCE. If the Policy is no longer in force upon expiration of the Residential Property Form, then all insurance under the Residential Property Form will end on its expiration date.

18. Changes of Provisions. No change may be made to any provision of the Residential Property Form except by written endorsement issued by US. No other written changes or oral changes will be valid.

IN WITNESS WHEREOF, Balboa Insurance Company has caused the Residential Property Form to be signed by its President and Secretary, at Irvine, California.

SECRETARY                                             PRESIDENT

# Manufactured Home Fire Insurance Form

### Risk Based Protection

### INSURING AGREEMENT

In consideration of the premium paid, and subject to the limits of liability, exclusions, conditions and other terms contained in the Lender's General Form and this Manufactured Home Fire Insurance Form ("Manufactured Home Form"), WE agree to indemnify YOU for a covered LOSS, to the extent of YOUR insurable interest in such LOSS.

### DEFINITIONS

Whenever used in this Manufactured Home Form, the following words shall have the meanings as shown herein:

"YOU," "YOUR," and "YOURS" mean the NAMED INSURED, shown under Item 1 on the DECLARATIONS PAGE of the Policy, under which the insurance on the DESCRIBED LOCATION has been issued, which has an interest in the MANUFACTURED HOME described in the NOTICE OF INSURANCE as the direct result of a first mortgage, second mortgage, other lien instrument, or an agreement for the servicing of such contracts.

"WE," "US," "OUR," and "OURS" mean the Company that underwrites this insurance.

"ACTUAL CASH VALUE" means the amount it would take to repair or replace the damaged or destroyed MANUFACTURED HOME on the DATE OF LOSS with material of like kind and quality, subject to deduction for deterioration, depreciation or obsolescence. ACTUAL CASH VALUE applies to valuation of property whether the property has sustained partial or total LOSS.

"BORROWER" means the person(s) or entity identified as the BORROWER on the NOTICE OF INSURANCE.

"DATE OF LOSS" means the date on which the LOSS occurred.

"DECLARATIONS PAGE" means the DECLARATIONS PAGE of the Policy, which identifies the Named Insured and the Policy Period applying to the Policy.

"DESCRIBED LOCATION" means the location identified as the DESCRIBED LOCATION on the NOTICE OF INSURANCE.

"NOTICE OF INSURANCE" refers to the form issued as notice of insurance purchased by YOU. A NOTICE OF INSURANCE form specifies the location, amount, and term of insurance for the individual MANUFACTURED HOME that has been insured by US at YOUR request.

"FUNGI" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

"LOSS" means direct, sudden and accidental physical damage to the MANUFACTURED HOME caused by an insured peril, or the theft of all or part of the MANUFACTURED HOME.

"MANUFACTURED HOME" means the home identified as the DESCRIBED LOCATION in the NOTICE OF INSURANCE, which consists of one or more factory-fabricated, transportable units, including attached structures and fixtures, which are subject to YOUR lien, first mortgage, second mortgage, note, or other obligation for which the home is pledged as collateral. A MANUFACTURED HOME must be constructed to be towed on a chassis or similar means of transportation, connected to utilities, and designed for year-round living. Land, including land on which the MANUFACTURED HOME is located, is not covered PROPERTY.

"POLICY" means the Policy as defined on the DECLARATIONS PAGE (referred to herein as "the Policy").

"VOLCANIC EVENT" means LOSS caused by the blast or airborne shock waves, ash, dust, or flow of lava from the eruption of a volcano.

## INSURED PERILS AND GENERAL EXCLUSIONS

We insure YOU for LOSS. However, WE do not insure YOU for loss or damage caused directly or indirectly by, consisting of, or resulting from, any of the following perils. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage:

1.  Wear and tear, marring, deterioration, inherent vice, latent defect, freezing, rust, corrosion, neglect before or after a LOSS, mechanical or structural breakdown or failure, abusive use, or defective, faulty, or inadequate maintenance, design, construction, remodeling, planning, zoning, surveying or siting of the MANUFACTURED HOME (incomplete remodeling is considered defective, faulty or inadequate remodeling). If any of these cause an ensuing LOSS in the form of a sudden and accidental escape of water from a plumbing, heating or air conditioning system or household appliance, WE cover LOSS caused by the water. WE also cover the cost of tearing out and replacing any part of a MANUFACTURED HOME necessary to repair the system or appliance from which this water escaped. We do not cover loss or damage to the system or appliance from which this water escaped;

2.  Contamination, pollution, smog, or vapors;

3.  Smoke from agricultural smudging or industrial operations;

4.  Flood, meaning a general, temporary condition of complete or partial covering or inundation of normally dry land areas from:
    a.  The overflow of tidal or inland water, including streams, rivers or lakes; or
    b.  The run-off or build-up of surface water from any source; or
    c.  Mudslides or mudflows caused by the build-up of water on or under the ground; or
    d.  The sinking, collapse or movement of land along the shore of a body of water, as a result of undermining or erosion caused by waves, flow, or currents of water exceeding normal levels.

    However, ensuing LOSS by fire or explosion will be covered;

5.  Water that backs up through or overflows from sewers, drains, plumbing lines, or sumps, however caused, if the origin of such backup or overflow is located off the DESCRIBED LOCATION;

6.  Water below the surface of the ground or the pressure exerted by such water, including its flow, seepage or leakage through foundations, walls, floors, basements, doors, windows, sidewalks, driveways, or any other opening;

7.  Earth movement caused by, resulting from, contributed to or aggravated by earthquake; landslide; the elevation, sinking, or shifting of land or soil, except a VOLCANIC EVENT, unless direct damage by a fire or explosion ensues, in which case WE will pay only for the ensuing fire or explosion LOSS;

8.  War, whether declared or not, insurrection, revolution, civil war, rebellion, warlike act by a military force or the personnel of any military force, seizure, destruction or use for a military purpose, including any consequence of any of these. The detonation or discharge of any nuclear weapon shall be deemed an act of war even if done accidentally;

9.  Nuclear reaction, radiation or radioactive contamination, or any consequence of any of these and loss caused by these shall not be considered loss by fire, explosion, or smoke, whether those perils be covered or not by the Manufactured Home Form;

10. Collapse, settling, shrinking, cracking, expansion or bulging of pavements, foundations, floors, walls, ceilings, patios, walkways or driveways;

11. Freezing of any heating, plumbing, or air conditioning system or any household appliance, or by the leakage, overflow or discharge from within the system or appliance caused by freezing during any period while the MANUFACTURED HOME is vacant, unoccupied or under construction unless YOU have:
    a.  maintained heat in the MANUFACTURED HOME, or
    b.  turned off the water supply and drained water from the system and appliances;

12. Freezing of, thawing of, or the pressure or weight of water, ice or snow on, whether driven by wind or not, a fence, pavement, patio, swimming pool, foundation, retaining wall bulkhead, pier, wharf or dock;

13. Constant or repeated seepage or leakage of water or steam over a period of time from a plumbing, heating or air conditioning system or any household appliance;

14. Theft of any property not attached to or part of the MANUFACTURED HOME, or theft of any part of the MANUFACTURED HOME while undergoing construction, remodeling or repair;

15. Hail, ice, snow, sleet or wind to any outdoor antennas, dishes, or aerials, including their lead-in wiring, supports, towers and masts;

16. Birds, rodents, reptiles, other animals, insects, fish;

17. FUNGI, wet or dry rot, viruses, bacteria, or pathogenic organisms, including spores, scents or by-products produced or released by any of these;

18. Acts or decisions of any person, group, governmental body or organization, including the failure to act to decide;

19. Power outage, meaning the interruption of power or other utility service if such interruption takes place away from the MANUFACTURED HOME.  If an ensuing LOSS to the MANUFACTURED HOME results from the power outage, WE will pay for such ensuing LOSS if it is not otherwise excluded by this Policy;

20. Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or structure, except as provided for under the Manufactured Home Form;

21. Conversion, embezzlement or secretion of all or part of the MANUFACTURED HOME by the BORROWER or anyone in legal possession of the MANUFACTURED HOME;

22. Loss or damage to tires, wheels or axels, unless such loss or damage is caused by fire while the tires, wheels, and axles are attached to the MANUFACTURED HOME;

23. Any peril if the MANUFACTURED HOME is being used for any illegal trade or business and such use contributes in any way to the LOSS;

24. Collision, impact, or upset to any MANUFACTURED HOME that is in transit, including the process of tearing down, setting up, or preparing the MANUFACTURED HOME for transit;

25. Seepage or leakage of rain, sleet or snow, or its ensuing loss or damage, whether or not wind driven.

Under paragraphs 1, 10, 11, 12, 13, 14, 15 and 16, any ensuing LOSS caused by any of these, if not otherwise excluded, is covered.

## CONDITIONS

The following conditions apply to this Manufactured Home Form:

1. Period of Coverage.  The Manufactured Home Form applies only to LOSS that occurs during the coverage period shown on the NOTICE OF INSURANCE.

2. Limit of Liability.  No matter how many people or entities have an insurable interest in the MANUFACTURED HOME, WE shall not be liable for an amount greater than the amount of insurance requested by YOU, as shown on the NOTICE OF INSURANCE, less the applicable deductible.

OUR liability shall not exceed the lesser of the following, less the applicable deductible stated in the NOTICE OF INSURANCE:
   a.  The Limit of Liability that applies to the damaged or destroyed MANUFACTURED HOME as shown in the NOTICE OF INSURANCE;

01A09-MFPL0002-E0504                    3

b.  The ACTUAL CASH VALUE of the damaged or destroyed MANUFACTURED HOME on the DATE OF LOSS, if the damaged or destroyed MANUFACTURED HOME has been repaired or replaced;

c.  The ACTUAL CASH VALUE of the damaged or destroyed MANUFACTURED HOME on the DATE OF LOSS, less contractor's overhead and profit if the damaged or destroyed MANUFACTURED HOME has not been repaired or replaced.

3.  Hail.  The amount WE will pay YOU for LOSS from hail will depend upon whether or not the LOSS causes structural damage, which means the actual penetration of the exterior surface or the breaking or cracking of support materials.  When this type of structural damage occurs as a result of LOSS from hail, WE will pay YOU the cost of repairing or replacing the damage with material of like kind and quality, to the extent that this amount exceeds the deductible.  If the damage consists only of dents to the exterior surface of the MANUFACTURED HOME, the amount WE will pay will be the difference between the ACTUAL CASH VALUE of the MANUFACTURED HOME immediately before the LOSS and its ACTUAL CASH VALUE immediately after the LOSS, to the extent that this amount exceeds the deductible.

4.  Fraud or Concealment.  WE will not provide coverage if YOU have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

5.  YOUR duties after LOSS.  When a LOSS has occurred, YOU shall see that the following duties are performed:
    a.  give US or OUR agent immediate notice of the LOSS;
    b.  protect the MANUFACTURED HOME from further loss or damage, make reasonable and necessary repairs required to protect the MANUFACTURED HOME, and keep an accurate record of the cost of such protection measures and repairs;
    c.  exhibit the damaged MANUFACTURED HOME to US or OUR representatives as often as WE reasonably require and submit to examination(s) under oath;
    d.  submit to US, within 60 days after WE request, YOUR signed, sworn proof of loss, which sets forth, to the best of YOUR knowledge and belief:
        (1)  the time and cause of LOSS;
        (2)  YOUR interest and the interest of all others in the MANUFACTURED HOME and all encumbrances existing thereon;
        (3)  the details of any other insurance that may cover the LOSS;
        (4)  any changes in the title or occupancy of the MANUFACTURED HOME during the term referenced on the NOTICE OF INSURANCE;
        (5)  specifications of the damaged MANUFACTURED HOME and detailed estimates for repair of the damage.

OUR request for examination(s) under oath shall not waive any of OUR rights.

6.  Pair or Set.  In settlement of covered damage to a pair or set, WE may elect to:
    a.  Replace or repair any part of the pair or set;
    b.  Pay the difference between the ACTUAL CASH VALUE of the pair or set before the LOSS and after the LOSS.

7.  Replacement of Glass.  WE will pay to replace glass with safety glazing materials when required by ordinance or law.

8.  Appraisal.  If YOU and WE fail to agree on the amount of LOSS, either can make a written demand upon the other that the amount of LOSS be determined by appraisal.  Within twenty (20) days of such written demand, each party shall select a competent and disinterested appraiser and notify the other of the appraiser selected.  The two appraisers shall then select a competent and impartial umpire.  If the appraisers do not agree on an umpire within fifteen (15) days, then, at the request of YOU or US, such umpire shall be selected by a judge of a court of record in the state where the MANUFACTURED HOME is located.  The appraisers shall then appraise the LOSS.  If the appraisers submit a written proof of agreement to US, the amount agreed upon shall prevail.  If the appraisers fail to agree, they shall submit their differences to the umpire within a reasonable time.  The amount agreed upon in writing and signed by any two of these three shall be the amount of the LOSS.  The appraisal award shall be considered binding as to the amount of the LOSS.  WE shall pay all the expenses of OUR chosen appraiser, and YOU shall pay all the expenses of YOUR chosen appraiser.  Each party shall also pay for its own voluntarily-incurred expenses including, but not limited to, attorney fees or expert witness fees. Any other expenses of the appraisal, including the compensation of the umpire, shall be paid equally by YOU and US. OUR request for appraisal shall not waive any of OUR rights.

01A09-MFPL0002-E0504                                        4

9. Other Insurance.  YOU and WE agree that the insurance provided under the Manufactured Home Form has been requested by YOU because YOU believe that no other insurance acceptable to YOU is in force to insure YOUR interest in the MANUFACTURED HOME.

Insurance under the Manufactured Home Form will automatically terminate on the effective date and time of any other policy or certificate of insurance acceptable to YOU.  WE shall not make any payment for LOSS if other insurance acceptable to YOU is in force on the DATE OF LOSS.

In no event shall this insurance apply on a pro-rata or contributing basis.   Insurance under the Manufactured Home Form does not supplement other insurance that provides inadequate limits of coverage or that contains more restrictive terms than the terms of the Manufactured Home Form.

10. Subrogation.  WE shall be subrogated to any rights YOU have to recovery against any person(s).  However, WE shall not exercise this right against the BORROWER.  WE may require an assignment of rights of recovery from YOU to the extent that payment is made by US.  If an assignment is sought, YOU shall sign and deliver all related papers, and shall otherwise cooperate with US and do nothing to impair OUR subrogation rights.

11. Suit against US.   No action may be brought unless there has been compliance with the provisions of the Manufactured Home Form, and the action is started within one year after the DATE OF LOSS.

12. Repair or Replacement Option.  WE may repair or replace any part of the damaged property with functionally-equivalent property if WE have given YOU or mailed to YOU at YOUR last known address, written notice of OUR intention to do so within thirty (30) days after WE receive YOUR signed, sworn proof of loss.

13. Loss Payment.  WE will adjust each LOSS with YOU and will pay YOU.  If the amount of LOSS exceeds YOUR insurable interest, the BORROWER may be entitled, as a simple loss payee only, to receive payment for any residual amount due for the LOSS, not exceeding the lesser of the applicable Limit of Liability indicated on the NOTICE OF INSURANCE and the BORROWER's insurable interest in the damaged or destroyed property on the DATE OF LOSS.   Other than the potential right to receive such payment, the BORROWER has no rights under the Manufactured Home Form.

Payment for LOSS will be made within thirty (30) days after WE reach agreement with YOU as to the amount of the LOSS or, failing that, within 30 days after the entry of a final judgment or the filing of an appraisal award with US.

14. Abandonment.  WE may take all, part, or none of the property for which WE have made payment, but YOU cannot abandon any property to US without our prior written approval.

15. No Benefit to Bailee. WE will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of the Manufactured Home Form.

16. Cancellation:

    a.  YOU may cancel the insurance provided under the Manufactured Home Form at any time by giving written notice
    b.  to US and the BORROWER stating when, thereafter, such cancellation is to take effect.  YOU may also cancel the insurance provided under the Manufactured Home Form if the BORROWER provides YOU proof of other insurance that is acceptable to YOU and insures YOUR interest in the MANUFACTURED HOME.  In such case, the effective date of cancellation will be the effective date of the insurance obtained by the BORROWER or the effective date of the insurance provided under the Manufactured Home Form, whichever is later.

    c.  WE may cancel the insurance provided under the Manufactured Home Form for non-payment of premium if WE have given YOU at least fifteen (15) days' written notice at YOUR last address known to US or at least sixty (60) days' written notice if the cancellation is for any reason other than non-payment of premium. WE may also cancel the insurance provided under the Manufactured Home Form if WE discover that other insurance acceptable to YOU is in effect to insure YOUR interest in the MANUFACTURED HOME, even if such other insurance is discovered after a LOSS.

d.   The completion of foreclosure or repossession proceedings on the MANUFACTURED HOME by YOU shall terminate the insurance provided under the Manufactured Home Form. In such case, notice of foreclosure or repossession by YOU to US will be YOUR request for cancellation. Cancellation will be effective on the date the Manufactured Home is conveyed to YOU or to a third party via the foreclosure or repossession process.

17.   Expiration of Insurance. If the Policy is in force upon expiration of the insurance provided under the Manufactured Home Form, YOU may request that new insurance under the Manufactured Home Form be issued to insure the MANUFACTURED HOME.  If YOU fail to request the issuance of new insurance under the Manufactured Home Form, the insurance on the MANUFACTURED HOME will cease upon the expiration date of the Manufactured Home Form stated in the NOTICE OF INSURANCE. If the Policy is no longer in force upon expiration of the Manufactured Home Form, then all insurance under the Manufactured Home Form will end on its expiration date.

18.   Changes of Provisions.  No change may be made to any provision of the  Manufactured Home Form except by written endorsement issued by US.  No other written changes or oral changes will be valid.

IN WITNESS WHEREOF, Balboa Insurance Company has caused the Manufactured Home Fire Insurance Form to be signed by its President and Secretary, at Irvine, California.

SECRETARY                              PRESIDENT

# BALBOA INSURANCE COMPANY

## RISK BASED PROTECTION

### FLORIDA - AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

I.  Part **4. TERMINATION** of the **SPECIAL PROVISIONS** Section of the LENDER'S GENERAL FORM is deleted in its entirety and replaced with the following:

**4. TERMINATION**

a.  YOU may cancel this Policy at any time by giving written notice to US stating when, thereafter, such cancellation shall be effective. If this Policy has been in effect for ninety (90) days or less and is not a renewal with US, WE may cancel for any reason by notifying YOU at least twenty (20) days before the date cancellation takes effect. WE will mail or deliver notice to YOU at YOUR last address known to US.

b.  If this Policy is cancelled, all in-force insurance on PROPERTY for which a NOTICE OF INSURANCE has been issued shall be cancelled concurrently unless the notice of cancellation states that the insurance referenced on the NOTICE OF INSURANCE will remain in effect. If the Company gives notice that any such coverage on specific PROPERTY will remain in effect after cancellation of the Policy, the coverage on the specific PROPERTY will then remain in force until the expiration date of such insurance or until the insurance on the specific PROPERTY has been cancelled in compliance with the cancellation provisions applying to the specific PROPERTY, except that the Company reserves the right to cancel insurance referenced in any or all NOTICES OF INSURANCE upon at least ten (10) days written notice if such cancellation is for non-payment of premium, or at least forty-five (45) days written notice if cancellation is for any reason other than non-payment of premium.

c.  If this Policy or NOTICE OF INSURANCE has been in effect for more than ninety (90) days, WE may cancel only for the following reason(s):

1.  Non-payment of premium;

2.  YOUR material misrepresentation or fraud used in the obtaining of this Policy;

3.  YOUR failure to comply with underwriting or loss control requirements established within ninety (90) days of the effective date;

4.  There has been a physical change in the risk covered by this Policy;

If WE cancel this policy for any of these reasons, WE will mail or deliver to the Named Insured at YOUR last known address, written notice stating when the cancellation will be effective, along with the reason(s) for cancellation, which will not be less than:

1.  Ten (10) days thereafter, if cancellation is for non-payment of premium; or

2.  One hundred (100) days thereafter, if cancellation is for the other reasons stated above.

d.  If WE elect not to renew this Policy, WE will mail written notice of non-renewal by first class mail to YOU at the last address known to US at least one hundred (100) days before the expiration date of the Policy, or the annual anniversary date if the Policy does not have a fixed expiration date.  The non-renewal notice will state the reason why the Policy is being non-renewed.

II. **DEFINITIONS**

(A) On the Residential Property Form, "ACTUAL CASH VALUE" is hereby deleted in its entirety and replaced by the following:

"ACTUAL CASH VALUE" means the amount it would take to repair or replace the damaged property on the DATE OF LOSS with material of like kind and quality, subject to deduction for deterioration, depreciation or obsolescence. ACTUAL CASH VALUE applies to valuation of property whether the property has sustained partial or total LOSS.

(B) On the Commercial Property Form, "CERTIFIED ACT OF TERRORISM" is deleted in its entirety.

(C) On the Commercial Property Form, "NON-CERTIFIED ACT OF TERRORISM" is deleted in its entirety.

(D) On the Commercial Property Form, the Residential Property Form and the Manufactured Home Form, the following definition is added: "CATASTROPHIC GROUND COVER COLLAPSE", means the geological activity that results in all of the following: (1) the abrupt collapse of the ground cover; (2) a depression in the ground cover clearly visible to the naked eye; (3) structural damage to the building, including the foundation; and (4) the insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure. Structural damage consisting merely of the settling or cracking of a foundation, structure, or building does not constitute a loss resulting from a CATASTROPHIC GROUND COVER COLLAPSE.

(E) On the Commercial Property Form, the Residential Property Form and the Manufactured Home Form, the following definition is added: "SINKHOLE LOSS' means structural damage to the building, including the foundation, caused by SINKHOLE ACTIVITY.

"SINKHOLE ACTIVITY" means settlement or systematic weakening of the earth supporting the covered building only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effects of water on a limestone or similar rock formation.

## III.  INSURED PERILS AND GENERAL EXCLUSIONS

Residential Property Form and Manufactured Home Form, Subsection 7. Earth movement, is deleted in its entirety and replaced by the following:

7. Earth movement caused by, resulting from, contributed to or aggravated by:

   (a) earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

   (b) landslide, mudslide or mudflow;

   (c) subsidence or sinkhole; or

   (d) any other earth movement, including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues, and then we will pay only for the ensuing fire or explosion loss.

This exclusion does not apply to loss by CATASTROPHIC GROUND COVER COLLAPSE or SINKHOLE LOSS.

## IV.  COVERED PERILS

The following are added to **COVERED PERILS** in the Commercial Property Form:

8. CATASTROPHIC GROUND COVER COLLAPSE.

9. SINKHOLE LOSS.

## V.  EXCLUSIONS

(A) Commercial Property Form, **EXCLUSIONS**, Subsection 1. "NON-CERTIFIED ACT OF TERRORISM" is deleted in its entirety.

(B) Commercial Property Form, **EXCLUSIONS**, Subsection 11. Earth movement is deleted in its entirety and replaced by the following:

11. Earth movement caused by, resulting from, contributed to or aggravated by:

   (a) earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

   (b) landslide, mudslide or mudflow;

   (c) subsidence or sinkhole; or

   (d) any other earth movement, including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues, and then we will pay only for the ensuing fire or explosion loss.

This exclusion does not apply to loss by CATASTROPHIC GROUND COVER COLLAPSE or SINKHOLE LOSS.

## VI.  CONDITIONS

(A) Residential Property Form and Manufactured Home Form, **CONDITIONS**, Subsection 11. Suit against US, is hereby deleted in its entirety and replaced by the following:

11. Suit against US. No action may be brought unless there has been compliance with the provisions of the Residential Property Form and the Lender's General Form, and the action is started within five (5) years after the DATE OF LOSS.

(B) Residential Property Form and Manufactured Home Form, **CONDITIONS**, Subsection 13. Loss Payment, is hereby revised by the following:

Whenever the term "thirty (30) days" is used it is replaced by twenty (20) days.

(C) Residential Property Form and Manufactured Home Form, **CONDITIONS**, Subsection 16. Cancellation subsection b., is hereby deleted in its entirety and replaced by the following:

    b. If this Policy or NOTICE OF INSURANCE has been in effect for less than ninety (90) days, WE may cancel the insurance provided under the Residential Property Form for non-payment of premium if WE have given YOU at least ten (10) days' written notice at YOUR last address know to US or at least twenty (20) days', written notice if the cancellation is for any other reason other than non-payment of premium. However, WE may cancel immediately if:

        1. YOU have used material misrepresentation or fraud in the obtaining of this Policy;

        2. YOUR failure to comply with underwriting or loss control requirements established within ninety (90) days of the effective date;

At YOUR request, WE may also cancel the insurance provided under the Residential Property Form if WE discover that other insurance acceptable to YOU is in effect to insure YOUR interest in the RESIDENTIAL PROPERTY and OTHER STRUCTURES, even if such other insurance is discovered after a LOSS.

(D) Commercial Property Form, **CONDITIONS**, Subsection 2. Limit of Liability subsection c., is hereby deleted in its entirety and replaced by the following:

    c. The ACTUAL CASH VALUE of the damaged or destroyed COMMERCIAL PROPERTY on the DATE OF LOSS, if the damaged or destroyed COMMERCIAL PROPERTY has not been repaired or replaced.

(E) Commercial Property Form, **CONDITIONS**, Subsection 9. Suit against US, is hereby deleted in its entirety and replaced by the following:

    9. Suit against US. No action may be brought unless there has been compliance with the provisions of the Commercial Property Form and the Lender's General Form, and the action is started within five (5) years after the DATE OF LOSS.

(F) Commercial Property Form, **CONDITIONS**, Subsection 11. Loss Payment, is revised by the following:

Whenever the term "thirty (30) days" is used it is replaced by twenty (20) days.

(G) Commercial Property Form, **CONDITIONS**, Subsection 14. Cancellation subsection b., is hereby deleted in its entirety and replaced by the following:

    b. If this Policy or NOTICE OF INSURANCE has been in effect for less than ninety (90) days, WE may cancel the insurance provided under the Commercial Property Form for non-payment of premium if WE have given YOU at least ten (10) days' written notice at YOUR last address know to US or at least twenty (20) days', written notice if the cancellation is for any other reason other than non-payment of premium. However, WE may cancel immediately if:

        1. YOU have used material misrepresentation or fraud in the obtaining of this Policy;

        2. YOUR failure to comply with underwriting or loss control requirements established within ninety (90) days of the effective date;

At YOUR request, WE may also cancel the insurance provided under the Commercial Property Form if WE discover that other insurance acceptable to YOU is in effect to insure YOUR interest in the COMMERCIAL PROPERTY, even if such other insurance is discovered after a LOSS.

All other provisions of this Policy apply.

This Endorsement is attached to and forms a part of Policy Number _____

Issued to _____

Effective Date of this Endorsement _____    Endorsement Number _____

9046
044771008



**Home Loans**

P.O. BOX 961291
FORT WORTH, TX  76161-0291

0000344-0002737 PDFE 001    873375

000344 - 002737
FAYYAZ SIAL
TABUSAM SIAL
9206 TOPNECK ST
NEW PORT RICHEY, FL 34654-4478

Notice Date:        JULY 19, 2011
Bank of America Loan #:        044771008
Property Address: 9206 TOPNECK STREET
                            NEW PORT RICHEY FL  34654

---

## IMPORTANT MESSAGE ABOUT YOUR LOAN

We previously notified you that we had not received evidence of existing and acceptable hazard (homeowner's) insurance on the above referenced property. According to your loan agreement, acceptable insurance coverage must be maintained on your home at all times. Therefore, as provided for in the loan agreement, we have purchased Lender-Placed Insurance at your expense in the amount of $4,089.46.   This amount is based, in part, upon our knowledge that the location above is Owner Occupied and a 0-10 year old home and other rating factors.   If this information is incorrect, please contact us at (866) 265-3321.  Additionally, if the occupancy of your property changes, the premium charged may differ from the amount stated in this letter.

## IMPORTANT INFORMATION ABOUT YOUR LENDER-PLACED INSURANCE

The cost of this coverage will be charged to you and has become an additional debt secured by your mortgage or deed of trust. If you do not have an escrow account, Bank of America, N.A. ("Bank of America") will establish one and charge the cost of the Lender-Placed Insurance to it. Charging the annual cost for this insurance to your escrow account will likely cause your monthly payment to increase.

Additional items to consider include;

- This insurance will provide less coverage than was previously in effect and it may duplicate existing coverage.
- This insurance may be more expensive than your previous coverage.
- The coverage amount for Lender-Placed Insurance is based on the replacement value, which we believe is the last known amount of coverage you purchased, and if we do not have that information, it is based on your current principal balance.
- This insurance provides no coverage for: loss or damage to personal property (such as personal contents of your home), loss from theft, injury to persons or property for which you may be liable, additional living expenses, or flood. Lender-Placed insurance does not provide guaranteed replacement cost coverage.
- The insurance may not be sufficient to fully restore or repair your property to its previous condition, and may **not** protect any equity that you may have built up on your property.
- This insurance may have other restrictions, exclusions and limitations specifically described in the coverage that we acquire.
- In the event of a claim, all payments will be due to Bank of America, except amounts in excess of Bank of America's interest which will be forwarded to you.

---

## WHAT YOU NEED TO DO

We encourage you to obtain your own preferred hazard (homeowner's) insurance coverage. In the event that you have your own policy:

Please write your loan number on all correspondence.

ARW4U1F7

RE:   FAYYAZ SIAL
     Bank of America Loan #:  044771008

- You will receive a full refund of the recent Lender-Placed Insurance payment, provided that your insurance coverage dates back to the expiration date of your previous policy. Please allow 14 business days for any Lender-Placed Insurance refund to apply back to your loan.
- If there is a lapse, the charges for the lapse will be charged to your escrow account.
- If you do not have an escrow account, you are obligated by your loan documents to reimburse us for the insurance charges during the lapse period.

We offer several options to update your insurance:

- Your agent can provide policy information on our business partner's website at **homeloanbusiness.bankofamerica.com;**
- You may **fax** a copy of your homeowner's insurance declaration page with your loan number to:  (800) 293-8158;
- You can have your agent **call** the customer service automated system at (866) 265-3321; or,
- You can **mail** a copy of your homeowner's insurance declaration page with your loan number to the return address above.

Please note, if you live in a condominium complex insured under a master policy issued to your condominium association, please send to us, using the mailing instructions shown above, evidence of insurance from the association's master policy demonstrating proof of adequate hazard insurance coverage.

Once you have updated your insurance information through one of the options listed above, you may confirm our records have successfully been updated by visiting our website at **bankofamerica.com,** or viewing your monthly statement.

---

**ADDITIONAL INFORMATION**

Additional information regarding the requirements of hazard insurance may also be found in your loan documents. Lender-Placed Hazard Insurance may be purchased from an affiliate of Bank of America, N.A.. Bank of America, N.A. may receive a commission or other compensation in connection with obtaining this coverage.

If your loan balance is below the amount of your last known hazard insurance coverage amount, then you may submit a written request to reduce the coverage to the amount of the outstanding principal balance of your loan. By doing so, however, you will be requesting coverage in an amount that may not be adequate to rebuild your home in the event of a large or total loss and may not cover your equity interest in your home. You should contact your insurance agent to review your insurance needs and to help you determine the coverage amount that is right for you. To request the lower, unpaid principal balance coverage amount, you will need to complete all items on the enclosed form, sign it, and then mail the form to the address shown on the form. We must receive the completed form within 35 days from the date posted on this letter or the coverage amount will remain as shown above.

---

**THANK YOU FOR YOUR BUSINESS**

We look forward to resolving this matter quickly and appreciate the opportunity to service your loan.

## BANK OF AMERICA CUSTOMERS
## HAZARD INSURANCE REQUIREMENTS

In order to protect the property, Bank of America requires that you maintain hazard insurance. At a minimum, your hazard insurance must be a fire and extended coverage policy. The insurance must not limit or exclude from coverage (in whole or in part) damage from windstorm, hurricane, hail damages, or any other perils that are a part of the extended coverage endorsement. Insurance coverage must be on a replacement cost basis, where available, and be in an amount at least equal to the lower of: 1) 100% of the insurable value of the improvements as established by the property insurer; or (2) the unpaid balance of the loan. Notwithstanding the foregoing, if the unpaid principal balance is less than 80% of the insurable value of the improvements, the coverage amount must be at least 80% of the insurable value. Rent loss coverage is required for non-owner-occupied properties. For coverage amounts of $252,700 or less, the maximum deductible is the higher of $1,000 or 1% of the policy's dwelling coverage. For coverage amounts greater than $252,700, the maximum deductible is the higher of $2,500 or 1% of the policy's dwelling coverage.

The insurance policy must be issued by an insurance company acceptable to Bank of America and licensed, or otherwise authorized by law, to conduct business in the jurisdictions in which the property is located. Your policy must be written by an insurance company with either an A.M. Best Rating of "B" or an A.M. Best's Financial Performance Rating of "VI" or better. The named insured on the policy must be the same as the mortgagor/trustor/grantor on your security instrument, or current owner if there has been a loan assumption. The policy must include a Lender's Loss Payable Endorsement or standard mortgagee/loss payee clause naming Bank of America, N.A. and its successors and assigns.

To help us maintain accurate records on your account, your loan number must be included on all policies, billings (if you have an escrow account), and correspondence with your insurer or insurance agent. You may provide us with any of the following: an original policy; a certified copy of an original policy; a certificate of insurance; a binder (only for coverage of less than $1,000,000) that complies with state law requirements; and for a non-escrowed loan, a paid receipt of premium paid for a 12-month policy term (6-month term in Florida only), or continuous coverage indicated in lieu of expiration date with 6 months prepaid.

Due to changes in federal or state laws or regulations, Bank of America may modify its insurance requirements to include additional types or amounts of coverage. If Bank of America makes a change, we will notify you so that you may purchase the required coverage.

If we do not receive proof of insurance, or a bill to enable us to pay your policy premium if you have an escrowed loan, Bank of America may obtain insurance to protect the property at your expense. The cost of insurance we purchase to protect the property will become an additional obligation secured by your security instrument. The coverage we purchase will insure for damage to your dwelling, but not its contents. It will be different than your current policy, will in most cases be more expensive, may have higher deductibles, and will not protect you from risks typically included in a homeowners policy. For example, it will not cover loss, damage or theft to personal property; or injuries to persons or damage to property for which you may be liable. It also does not cover worker's compensation or damage due to flood or earthquake. Our lender-placed coverage may not be enough to fully replace or repair your property in the event of damage or destruction. This insurance may **not** protect any equity that you have built up on your property.

WE URGE YOU TO REPLACE ANY LENDER-PLACED INSURANCE WITH YOUR PREFERRED POLICY, WHICH WILL PROBABLY BE LESS EXPENSIVE FOR YOU AND PROVIDE BROADER PROTECTION. If Bank of America receives a replacement policy that complies with our insurance requirements, we will cancel our lender-placed coverage effective the date that your preferred policy takes effect. If there is a lapse in coverage between your new preferred policy and the policy you or we had obtained before, you will be charged a prorated premium and state-imposed fee (if any) for the period that no borrower-placed coverage was in place. If you provide us with proof that you had adequate insurance on your property as of the date our lender-placed coverage was effective, (i.e., no lapse in coverage) and that you continue to have the insurance that you purchased yourself, you will not be charged any premium, costs, interest or other charges in connection with lender-placed insurance.

Lender-Placed Hazard Insurance may be purchased from an affiliate of Bank of America, N.A.. Bank of America, N.A. may receive a commission or other compensation in connection with obtaining this coverage.

## NOTICE OF LENDER-PLACED INSURANCE

Residential Property Fire Insurance
Risk Based Protection

## BALBOA INSURANCE COMPANY

(A Stock Company)
Home Office
3349 Michelson Drive, Suite 200, Irvine, CA 92612-8893

Date: 07/19/2011

Control Number: B8818688

Policy Number:   4800-0100

Loan Number:   9046-0000-044771008

| NAMED INSURED: | BORROWER: |
|---|---|
| BANK OF AMERICA, N.A. | FAYYAZ SIAL |
| P.O. BOX 961291 | TABUSAM SIAL |
| FORT WORTH, TX  76161-0291 | 9206 TOPNECK ST |
| | NEW PORT RICHEY, FL  34654-4478 |

COVERAGE PERIOD:  From: 05/12/2011  Until: 05/12/2012, beginning and ending at 12:01 am Standard time at the DESCRIBED LOCATION.

DESCRIBED LOCATION:                                    LIMIT OF LIABILITY FOR RESIDENTIAL PROPERTY:

9206 TOPNECK STREET
NEW PORT RICHEY FL 34654                     $433,000.00

DEDUCTIBLES:                                      $1,000.00   Occupied
                                                 $1,000.00   Vacant

| PREMIUM: | Insurance premium: | $3,980.00 |
| | Citizens Regular Recoupment (2004): | 00.000% |
| | Hurricane Catastrophe Fund Assessment: | 01.300% |
| | Insurance Guaranty Fund Recoupment: | 00.000% |
| | Insurance Guaranty Fund Emergency Recoupment: | 00.000% |
| | Citizens Regular Recoupment (2005)*: | 00.000% |
| | Citizens Emergency Assessment (2005): | 01.400% |
| | Department of Revenue Fee (EMPATF): | $2.00 |
| | Total: | $4,089.46 |

## THE $0.00* SURCHARGE IN YOUR PREMIUM FOR THE 2005 ASSESSMENT BY CITIZENS PROPERTY INSURANCE CORPORATION HAS BEEN REDUCED BY $0.0 DUE TO AN APPROPRIATION BY THE FLORIDA LEGISLATURE.

The NAMED INSURED has purchased insurance on the DESCRIBED LOCATION for the amount and premium indicated above.

The contract of insurance is only between the NAMED INSURED and Balboa Insurance Company. There is no contract of insurance between the BORROWER and Balboa Insurance Company. The insurance purchased is intended for the benefit and protection of the NAMED INSURED, insures against LOSS only to the dwelling and OTHER STRUCTURES on the DESCRIBED LOCATION, and may not sufficiently protect the BORROWER'S interest in the property. No coverage is provided for contents, personal effects, additional living expense, fair rental value or liability. NO COVERAGE IS PROVIDED FOR LOSS CAUSED BY EARTHQUAKE OR FLOOD or any other cause of loss that is excluded by the Residential Property Fire Insurance Form. The NAMED INSURED may cancel the insurance coverage at any time.

0000344-0002741 873375

This NOTICE is for information purposes only. It does not amend, extend, or alter the insurance contained in the Residential Property Fire Insurance Form. Any coverage provided is subject to the terms, conditions, limitations and exclusions contained in the Residential Property Fire Insurance Form.

To report a claim, call:  (800) 323-7466
For other inquiries, call:  (866) 265-3321

2

0000344-0002742 873375



**Home Loans**

P.O. BOX 961291
FORT WORTH, TX 76161-0291

9046
044771008

Date: 07/19/2011

Control Number: B8818688

000344 - 002743
FAYYAZ SIAL
TABUSAM SIAL
9206 TOPNECK ST
NEW PORT RICHEY, FL 34654-4478

RE: Loan Number: 9046-044771008
Property Address 9206 TOPNECK STREET
NEW PORT RICHEY FL 34654

Dear Fayyaz and Tabusam Sial:

The amount of lender-placed insurance coverage we obtained is based on the homeowners insurance coverage amount you last purchased or, if we did not have that information, then your outstanding principal loan balance at that time was used. If your loan balance is below the amount of homeowners insurance coverage you last purchased, then you may reduce the lender-placed insurance coverage amount to the outstanding principal balance of your loan. By doing this, the coverage amount will be less than what could be provided using the amount of homeowners insurance coverage you last purchased.

    A.  Current Amount of Dwelling Coverage: $433,000.00

    B.  Optional Amount of Dwelling Coverage (based on outstanding principal balance): $394,487.00

**If you wish to lower the lender-placed insurance coverage amount to your loan balance (if your loan balance is less than the last known amount of homeowners insurance coverage), check the box below, sign this form and mail the entire form to the address shown in the top left corner of this letter. You have up to 35 days from the date posted on this letter to mail your request or it shall be conclusively presumed that you have elected not to change the coverage amount.**

Upon receipt of your request, we will cancel the current lender-placed insurance coverage and reissue with a coverage amount equal to your outstanding principal loan balance at the time your last insurance policy lapsed. We will then bill you the appropriate insurance charges for a one year term. If you request this coverage amount change, it will be effective as of the date your last insurance policy lapsed.

**\* \* PLEASE NOTE, YOU MUST RETURN THIS ENTIRE LETTER
TO LOWER THE COVERAGE AMOUNT.**

YOU ARE NOT OBLIGATED TO LOWER THE COVERAGE AMOUNT, AND
WE WILL NOT CHANGE THE COVERAGE AMOUNT UNLESS WE HEAR
FROM YOU.\*\*

\_\_\_\_\_   Yes, please lower the Coverage Amount to be equal to my outstanding principal loan balance of $394,487.00. I am aware that by lowering the amount of coverage, the coverage amount will be less than what could be provided using the amount of homeowners insurance coverage I last purchased and may not be enough to fully replace or repair the property in the event of damage or destruction.

Signature: _____   Date: _____

AR80772